# 18-3371

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

—————————————

IN RE: KIRWAN OFFICES S.A.R.L.,
*Debtor.*
************************************************
STEPHEN P. LYNCH,
*Appellant*,
v.
MASCINI HOLDINGS LIMITED, LAPIDEM LIMITED,
*Creditors-Appellees*.

—————————————

On Appeal from the U.S. District Court for the Southern District of New York

—————————————

## APPELLEES' SUPPLEMENTAL BRIEF IN REPLY TO THE BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

—————————————

Mark McDermott
Jonathan Frank
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
mark.mcdermott@skadden.com
jonathan.frank@skadden.com

*Counsel for Creditors-Appellees*
Dated: October 28, 2019

# TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................1

    A.    The Issues In This Appeal Should Be Disposed Of Based On
           The Doctrines Of Waiver And Consent ...............................................2

    B.    The Bankruptcy Court Had Jurisdiction To Approve The
           Exculpation Clause ...........................................................................5

         1.    This Case Involves An Exculpation Clause, Not A Non-
                Debtor, Third-Party Release .......................................................5

         2.    The Bankruptcy Court's Jurisdiction Over The
                Exculpation Clause Was Core .................................................10

         3.    Alternatively, Jurisdiction Over The Exculpation Clause
                Was Non-Core And Mr. Lynch Consented To It ....................15

CONCLUSION ......................................................................................17

CERTIFICATE OF COMPLIANCE......................................................18

CERTIFICATE OF SERVICE ..............................................................19

ii

# TABLE OF AUTHORITIES

## CASES

*In re Aegean Marine Petroleum Network Inc.*,
    599 B.R. 717 (Bankr. S.D.N.Y. 2019) ...........................................................9

*Astor Holdings, Inc. v. Roski*,
    325 F. Supp. 2d 251 (S.D.N.Y. 2003) ............................................................9

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010) ........................................................................11

*Blixseth v. Yellowstone Mountain Club, LLC*,
    No. 16-35304 (9th Cir.) ..................................................................................9

*Deutsch Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia
    Fiber Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005) ...........................................................................2

*In re Fisher Island Investment, Inc.*,
    778 F.3d 1172 (11th Cir. 2015) ....................................................................13

*Johns-Manville Corp. v. Chubb Indemnity Insurance Co. (In re Johns-
    Manville Corp.)*,
    517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom.*
    *Travelers Indenity Co. v. Bailey*, 557 U.S. 137 (2009) ...........................6, 15

*Lynch v. Lapidem Ltd. (In re Kirwan Offices S.à r.l.)*,
    592 B.R. 489 (S.D.N.Y. 2018) ..............................................................1, 4, 11

*Meritage Homes of Nevada v. JPMorgan Chase Bank, N.A. (In re South
    Edge LLC)*,
    478 B.R. 403 (D. Nev. 2012) ..........................................................................9

*In re Millennium Lab Holdings II, LLC*,
    575 B.R. 252 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559
    (D. Del. 2018), *on appeal*, No. 18-3210 (3d Cir.) .........................................7

iii

*In re Millennium Lab Holdings II, LLC*,
    591 B.R. 559 (D. Del. 2018), *on appeal*, No. 18-3210 (3d Cir.) ...................6

*In re Petrie Retail, Inc.*,
    304 F.3d 223 (2d Cir. 2002) ..........................................................................12

*Resorts International, Inc. v. Lowenschuss (In re Lowenschuss)*,
    67 F.3d 1394 (9th Cir. 1995) ...........................................................................9

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ............................................................................7

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ..........................................................................10

*Travelers Indemnity Co. v. Bailey*,
    557 U.S. 137 (2009)........................................................................................10

*W.R. Huff Asset Management Co. v. PWS Holding Corp. (In re PWS Holding Corp.)*,
    228 F.3d 224 (3d Cir. 2000) .......................................................................8, 9

## STATUTES

11 U.S.C. § 101(42) .........................................................................................10

11 U.S.C. § 157(b)(2)(L) .................................................................................10

11 U.S.C. § 303 ................................................................................................10

11 U.S.C. § 524(a) ...........................................................................................13

11 U.S.C. § 1141(a) .........................................................................................13

11 U.S.C. § 1334(a) .........................................................................................10

11 U.S.C. § 1334(b) .........................................................................................10

28 U.S.C. § 157(b)(2)(L) ...................................................................................7

iv

## ARGUMENT

Appellees Lapidem Ltd. and Mascini Holdings Limited (the "Lenders") established in their opening brief that this Court need not and should not reach the merits of Appellant Stephen Lynch's claims in order to affirm. Lenders' Opening Br. ("Br.") 16-22. The government's amicus brief makes clear that it agrees with the Lenders – Mr. Lynch's claims need not be addressed because none were properly preserved for appellate review. U.S. Amicus Brief ("U.S. Br.") 9-11. Indeed, Mr. Lynch – upon advice of counsel – waived them all and otherwise consented to everything he now attempts to challenge in this appeal. *See Lynch v. Lapidem Ltd. (In re Kirwan Offices S.à r.l.)*, 592 B.R. 489, 501-02 (S.D.N.Y. 2018).

Nevertheless, the government goes on to address the merits of certain of Mr. Lynch's arguments to suggest that the Bankruptcy Court did not have core jurisdiction to approve an exculpation provision of a chapter 11 plan that affords Lenders with certain protections based upon their good faith participation in the restructuring process. U.S. Br. 11-25. Lenders, and this Court's ample precedent, oppose that position. As set forth below, this Court should reject the government's substantive analysis in the event that it elects to review the underlying merits of the District Court's decision.

1

A. **The Issues In This Appeal Should Be Disposed Of Based On The Doctrines Of Waiver And Consent**

The government focuses on several issues that, while easily conflated, implicate three, doctrinally-separate, legal questions: (i) whether there is any statutory authority for bankruptcy courts or district courts to confirm chapter 11 reorganization plans that contain releases and exculpation clauses; (ii) whether there is core subject matter jurisdiction for bankruptcy courts or district courts to confirm such plans; and (iii) whether bankruptcy courts have constitutional adjudicative authority to enter final orders confirming such plans.

With respect to the first issue, the government argues that this Court should overrule its long-standing precedent and hold that bankruptcy courts do not have any statutory authority to confirm chapter 11 reorganization plans that contain releases and exculpations. U.S. Br. 12-16; *see, e.g.*, *Deutsch Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005). Respectfully, this issue was never presented to, or considered by, either the Bankruptcy Court (Drain, J.) or the District Court (McMahon, C.J.). Indeed, the government concedes that this issue "is not the subject of this appeal."

2

U.S. Br. 12.  This Court therefore should respectfully decline to address it in this case.[1]

With respect to the second issue, the government argues that the Bankruptcy Court did not have "core" subject matter jurisdiction to approve, on a final basis, the exculpation clause contained in Kirwan's chapter 11 plan of reorganization that enjoins Mr. Lynch's claims that these chapter 11 cases violated the parties' shareholders agreement (the "SHA").  U.S. Br. 17-18.  However, the Bankruptcy Court specifically found that it had core subject matter jurisdiction over Mr. Lynch's claims.  A-1687-88.  Mr. Lynch appealed this order to the District Court – then voluntarily dismissed it.  A-1792-93.  As the District Court determined, the Bankruptcy Court's order finding that it had core jurisdiction therefore is "final on

---

[1]  Lenders disagree with the government's position that the Bankruptcy Code does not authorize bankruptcy courts to approve releases and exculpation clauses in chapter 11 plans of reorganization.  Because this issue is not the subject of this appeal, Appellees do not address it in this brief.  However, Lenders reserve all rights to do so if this Court chooses to consider it.  Respectfully, any such briefing would be far more extensive than the short discussion in the government's brief.  Releases and exculpations are prominent features of almost all significant chapter 11 reorganization plans.  Hundreds, if not thousands, of plans containing such provisions have been confirmed, and the Courts of Appeals have issued dozens of rulings addressing the propriety of releases over the last 30 years.  Numerous industry groups undoubtedly would want and need the opportunity to weigh in on the matter if this Court were to consider reversing itself on this most critical issue.

3

the merits and is *res judicata*." *Kirwan*, 592 B.R. at 507-08 (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) ("Even subject-matter jurisdiction . . . may not be attacked collaterally.")).

Even if this Court were to assume that the Bankruptcy Court only had "non-core" jurisdiction to approve the exculpation clause such that the Bankruptcy Court could not have approved it on a final basis absent parties' consent, Mr. Lynch in fact consented, as the Bankruptcy Court found, A-1529, and the District Court affirmed. *Kirwan*, 592 B.R. at 508-09. This Court therefore need not determine that the Bankruptcy Court had core jurisdiction over the exculpation clause for this additional reason. For the same reason, Mr. Lynch's consent allays any need for this Court to decide the third issue, i.e., whether bankruptcy courts have the constitutional adjudicative authority to enter final orders over chapter 11 plans containing exculpation clauses.

In short, the statutory authority question has never been raised in these cases and hence, is not the subject of this appeal, and the jurisdictional and constitutional authority questions need not be addressed because Mr. Lynch waived the right to pursue them. The merits therefore need not and should not be addressed.

4

**B.    The Bankruptcy Court Had Jurisdiction
To Approve The Exculpation Clause**

Assuming this Court determines it is necessary to address the jurisdictional

issue, as Lenders argued in their principal brief, the Bankruptcy Court had core

jurisdiction to approve the exculpation clause.  Lenders discuss this issue further

below to address certain of the government's arguments that respectfully confuse

the precise issue in this appeal.

**1.    This Case Involves An Exculpation Clause,
Not A Non-Debtor, Third-Party Release**

This case involves an exculpation clause, <u>not</u> a release.  The two share some

similarities, but they are legally distinct; apply to completely different scenarios;

and serve different purposes.  Respectfully, the government's brief lumps them

together, and its analysis is divorced altogether from the facts of this case.  U.S. Br.

17-25.  Indeed, the government does not even cite, let alone analyze, the precise

terms of the exculpation clause at issue here.  As a result, much of the

government's discussion is misplaced and hence, not relevant to this appeal.

The word "release" – as used in the government's brief; in the many court

decisions discussing them; and among bankruptcy judges and practitioners – is

shorthand for a "non-debtor, third-party release."  Such a release in a chapter 11

plan releases one or more non-debtors from liability to one or more other non-

5

debtors on account of acts and theories of liability arising <u>independently</u> of the bankruptcy. An example of a case addressing such a release is this Court's decision in *Johns-Manville Corp. v. Chubb Indemnity Insurance Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indenity Co. v. Bailey*, 557 U.S. 137 (2009).

In *Johns-Manville*, the debtor's plan of reorganization purported to release non-debtor insurers from any liability to asbestos victims, including on account of the insurers' alleged own tortious conduct in misleading the public about the dangers of asbestos. This Court held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly address the *res* of the bankruptcy estate." 517 F.3d at 66. Based on that holding, this Court concluded that because the alleged liability of the insurers pertained to their own conduct that was independent of the bankruptcy, there could be no effect on the *res* of the estate and hence, no bankruptcy court jurisdiction to approve the insurers' release.

Another, more recent, example of a non-debtor, third-party release is provided by *In re Millennium Lab Holdings II, LLC*, currently on appeal to the Third Circuit Court of Appeals. 591 B.R. 559 (D. Del. 2018), *on appeal*, No. 18-3210 (3d Cir.). The district court in that case affirmed the bankruptcy court's confirmation of a plan of reorganization that released the debtor's equity owners

6

from direct liability to the debtor's lenders. The lenders sued the equity owners for the owners' alleged Medicaid fraud. Such conduct was independent of the debtor's conduct and independent of the bankruptcy. The plan released and enjoined further prosecution of this suit.

The claims in *Johns-Manville* and *Millennium Lab* were not based on bankruptcy law. More importantly, they were not the types of claims that could arise <u>only</u> in the context of bankruptcy proceedings. To the contrary, they were asserted, and could have been pursued, absent the bankruptcy altogether. As a result, they were not "core" bankruptcy proceedings. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) (non-core proceedings are those that could arise outside of bankruptcy, but that otherwise have a conceivable effect upon the *res* being administered in bankruptcy).[2]

---

[2] The lower courts in *Millennium Lab* ruled that there was "core" bankruptcy jurisdiction to confirm plans of reorganizations that release otherwise non-core claims because confirmation hearings are core proceedings under the Bankruptcy Code. *See In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 271 (Bankr. D. Del. 2017)*, aff'd*, 591 B.R. 559, 574-75 (D. Del. 2018), *on appeal*, No. 18-3210 (3d Cir.); 28 U.S.C. § 157(b)(2)(L). As explained in Lenders' principal brief and further below, this is the correct approach when considering the release of otherwise non-core matters in the context of a core, plan confirmation proceeding.

7

An exculpation clause is fundamentally different from a release. Like a release, an exculpation clause immunizes one or more non-debtors from potential liability to other non-debtors – but <u>only</u> on account of matters that arose out of the restructuring itself and that have been subject to the oversight and supervision of the bankruptcy court. In other words, whereas a release covers matters that could arise <u>independently</u> of the bankruptcy; an exculpation covers matters that arise <u>only</u> in bankruptcy.

The exculpation clause here enjoins suits against Lenders on account of only two, discrete matters: their determination (i) to call their loans and commence the chapter 11 cases and (ii) to pursue confirmation of a plan that would reject the SHA. A-875; A-1073-74; A-1088. The clause does not purport to prohibit Mr. Lynch or anyone else from pursuing claims on account of other matters that could have been brought absent the bankruptcy. In short, the plan does not contain a non-debtor, third-party release. It simply says that Mr. Lynch cannot sue Lenders on account of two matters – each subject to the Bankruptcy Court's jurisdiction – which the Bankruptcy Court already adjudicated on the merits.

While there are dozens of Court of Appeals decisions addressing the propriety of non-debtor, third-party releases, there is only one Court of Appeals decision addressing exculpation clauses. *W.R. Huff Asset Mgmt. Co. v. PWS*

8

*Holding Corp. (In re PWS Holding Corp.)*, 228 F.3d 224 (3d Cir. 2000). The

Third Circuit in *PWS Holding* affirmed the lower courts' approval of the

exculpation clause, reasoning that such clauses simply reflect the general rule that

estate fiduciaries who undertake efforts to reorganize a debtor are entitled to

qualified immunity for their efforts. *Id.* at 246-27.[3]

Additionally, several lower courts have approved exculpation clauses

covering non-estate fiduciaries, like Lenders here, who are instrumental in

reorganizing a debtor. *See, e.g.*, *In re Aegean Marine Petroleum Network Inc.*, 599

B.R. 717 (Bankr. S.D.N.Y. 2019); *Meritage Homes of Nev. v. JPMorgan Chase

Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403 (D. Nev. 2012); *Astor Holdings, Inc.

v. Roski*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003). Indeed, Kirwan neither filed its

own bankruptcy petition nor proposed a plan of reorganization. Lenders did both.

---

[3]   As of the filing of this brief, the Ninth Circuit Court of Appeals has under
advisement an appeal involving the propriety of an exculpation clause. *See
Blixseth v. Yellowstone Mountain Club, LLC*, No. 16-35304 (9th Cir.).
Jurisdiction is not the basis of that appeal. It is instead whether an exculpation
clause may be approved consistent with other Ninth Circuit precedent
prohibiting outright any plan provision that releases a non-debtor third-party.
*See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th
Cir. 1995). Counsel of record to Lenders in this case served as counsel as of
record in the Ninth Circuit appeal.

In short, releases and exculpations are two different things. Only the latter is at issue in this appeal. As described below, exculpation clauses are easier to analyze from a jurisdictional standpoint.

## 2. The Bankruptcy Court's Jurisdiction Over The Exculpation Clause Was Core

The two matters covered by the exculpation clause here are themselves subject to a bankruptcy court's core, subject matter jurisdiction. The government does not dispute this. As explained in Lenders' primary brief, bankruptcy courts have exclusive subject matter jurisdiction over matters involving the propriety of a bankruptcy petition. Br. 22-26; 11 U.S.C. §§ 101(42), 303, 1334(a); *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006). They also have core jurisdiction over plan confirmation hearings. Br. 24-26; 11 U.S.C. §§ 157(b)(2)(L), 1334(b). The Bankruptcy Court approved both the bankruptcy petition and the plan of reorganization, ruling in each case that neither breached the SHA. A-637-38; A-1300.

A court unquestionably has jurisdiction to enforce its own orders. *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151-54 (2009). That is all that an exculpation clause does, i.e., it specifies that disgruntled parties are precluded from launching collateral attacks on a bankruptcy court's orders by suing other good faith bankruptcy participants in non-bankruptcy tribunals on account of matters the

10

bankruptcy court supervised and approved. Because the orders that the Bankruptcy Court approved here were themselves core, the Bankruptcy Court's jurisdiction to enforce them via the exculpation clause also must be core.

Indeed, an exculpation clause that protects parties on account of bankruptcy-related conduct by definition can arise—*only in bankruptcy*. *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010) (core matters are those that could arise only in bankruptcy). Again, the government appears to agree. It states in its brief as follows: "At a minimum, a bankruptcy court's 'arising in' jurisdiction includes claims that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy . . . . [For example], a bankruptcy court plainly has jurisdiction to enforce its own orders." Gov. Brief at 18, n.4 (emphasis added) (quoting *Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 53 (2d Cir. 2016)).

As the District Court further explained, a plan is a single, unitary document that is considered as an integrated whole at a confirmation hearing. *Lynch v. Lapidem Ltd. (In re Kirwan Offices S.à r.l.)*, 592 B.R. 489, 504-05 (S.D.N.Y. 2018). But by the government's logic, a single clause in a plan like an exculpation clause can be hived off with a different jurisdictional basis than the plan as a whole. The implication is that a plan confirmation hearing over a plan that

11

contains an exculpation clause must be bifurcated into two proceedings absent everyone's consent: (i) one handled as a core proceeding by the bankruptcy court over all aspects of the plan <u>other</u> than the release, and (ii) another handled by a district court and that pertains <u>only</u> to the release. Clearly that is a highly unworkable approach.

Indeed, another possible implication of the government's reasoning is that any plan that contains a release must be adjudicated by a district court. Because so many chapter 11 plans contain releases, this approach would result in a sea change in the historical division of responsibility over bankruptcy matters between district courts and bankruptcy courts, with a significant number of plan confirmation hearings conducted by district courts rather than bankruptcy courts. Respectfully, that cannot be the right approach, either.

A plan, put simply, must be considered as a whole by bankruptcy courts, and such proceedings must be considered core, even if one clause in the document, standing alone, might otherwise be non-core. This Court's decision in *In re Petrie Retail, Inc.* is highly relevant on this score – a case the government does not even cite, let alone analyze. 304 F.3d 223 (2d Cir. 2002). This Court held in that case that a dispute arising out of a prepetition contract like the SHA here is nonetheless subject to core jurisdiction if the dispute is <u>not independent</u> of the bankruptcy. A

12

dispute is not independent if it is <u>unique</u> to or <u>uniquely affected by</u> the bankruptcy proceeding <u>or affects a core bankruptcy function</u>.

While Mr. Lynch's asserted claims against Lenders arise out of a prepetition contract, those claims were unique to and uniquely affected by Kirwan's bankruptcy because the bases of the alleged breaches were the filing of the involuntary petition and confirmation of the plan that rejected the SHA. That makes them core. *See also In re Fisher Island Inv., Inc.*, 778 F.3d 1172 (11th Cir. 2015) (bankruptcy court had core jurisdiction over dispute over control of debtor as part of ruling on motion to dismiss involuntary petition even though dispute turned on state law governance rights and was between non-debtors).

Finally, the government argues that a bankruptcy court cannot preemptively enjoin collateral attacks against its own orders. Instead, according to the government, a party's only remedy when sued in some other forum on account of matters already adjudicated by a bankruptcy court is to seek dismissal based on *res judicata*. U.S. Br. 16. Respectfully, there are three things wrong with the government's position. First, the government cites no authority in support of it. Indeed, the Bankruptcy Code <u>itself</u> provides that a confirmed plan of reorganization binds all parties and serves as an injunction against the commencement of suits in other forums. 11 U.S.C. §§ 524(a), 1141(a).

13

Second, the government's approach is impractical. Bankruptcy practitioners have learned from hard experience that they have a much better chance of stopping frivolous, collateral litigation if they can point a non-bankruptcy tribunal to a provision in a federal court order that enjoins such litigation. Without the provision, they are left to either argue bankruptcy law to a non-bankruptcy tribunal, or to go back to the bankruptcy court and obtain an order compelling dismissal – which then will need to be lodged back with the non-bankruptcy tribunal. Lenders should not be forced to go down this road with a London arbitrator.

Third, the government overlooks the fact that Lenders did in fact seek dismissal of Mr. Lynch's post-bankruptcy arbitration from the Bankruptcy Court. A-1096-1110. As described in Lenders' brief, Mr. Lynch commenced his London arbitration for breach of the SHA mere days after he lost on the very same litigation before the Bankruptcy Court. Br. 28-29. Lenders filed a motion to compel Mr. Lynch's compliance with the plan, including the exculpation clause. A-1096-1110. The Bankruptcy Court ordered him to dismiss the arbitration with prejudice – yet he never did so. A-1405.

In short, a bankruptcy court clearly has core jurisdiction to enjoin collateral attacks against its own core orders by affording qualified immunity to good faith

14

participants in the bankruptcy process from suits in non-bankruptcy forums by disgruntled creditors and shareholders. The District Court's affirmance of the Bankruptcy Court's approval of the exculpation clause therefore should be affirmed.

### 3. Alternatively, Jurisdiction Over The Exculpation Clause Was Non-Core And Mr. Lynch Consented To It

The government does not appear to argue that the Bankruptcy Court did not have any jurisdiction whatsoever to approve the exculpation clause. Rather, it appears to argue only that such jurisdiction was not core. U.S. Br. 17-24. That said, the matter is not entirely clear from the government's brief. To remove any doubt, at an absolute minimum, non-core jurisdiction existed over the exculpation clause.

As noted above, a bankruptcy court has non-core jurisdiction over a dispute if its outcome would have some conceivable effect on the *res* being administered in bankruptcy. *Johns-Manville*, 517 F.3d at 66. Collateral attacks on bankruptcy court orders in non-bankruptcy forums via suits against good faith participants in the bankruptcy process not only would have an effect on the *res* being administered in bankruptcy; such attacks would destroy the *res*. In fact, such attacks would destroy the bankruptcy process, completely undermining bankruptcy

15

jurisdiction and abrogating the uniformity of the bankruptcy laws mandated by the Constitution.

Again, the government does not appear to argue otherwise. It also does not challenge the Bankruptcy Court's findings, which the District Court affirmed, that Mr. Lynch consented to entry of a final confirmation order approving the exculpation clause by his purposeful decision to avoid participating in the confirmation hearing for his own strategic reasons. Accordingly, as stated at the outset of this brief, this Court can affirm the District Court on these narrow, alternative grounds, without resolving whether core jurisdiction existed here.

## CONCLUSION

For the foregoing reasons, Lenders respectfully request that this Court (i) enter an order affirming the ruling of the District Court and (ii) granting Lenders such other relief as the Court deems just, proper and equitable.

Dated:      New York, New York
            October 28, 2019

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

By: */s/ Mark A. McDermott*
     Mark A. McDermott
     Jonathan Frank
     Four Times Square
     New York, New York 10036
     (212) 735-3000
     mark.mcdermott@skadden.com
     jonathan.frank@skadden.com

*Counsel for Creditors-Appellees*

17

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Local Rule 32.1(1)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,466 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 14.0.7232.5000 with 14-point Times New Roman font.


*/s/ Mark A. McDermott*
Mark A. McDermott

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
mark.mcdermott@skadden.com


*Counsel for Creditors-Appellees*

Date: October 28, 2019

# CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on October 28, 2019, I served a true copy of *Appellees' Reply To The Brief For The United States As Amicus Curiae* by first-class mail upon:

Stephen P. Lynch
Bureau Korporativnykh Konsultacij (BKK)
Kutuzovski Prospect, #26, Str.3
Moscow, 121165
Russia


*/s/ Mark A. McDermott*
Mark A. McDermott
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
mark.mcdermott@skadden.com

*Counsel for Creditors-Appellees*

Date: October 28, 2019

19