# 18-3371

## *United States Court of Appeals*

### FOR THE SECOND CIRCUIT
### Docket No. 18-3371

——◆◆◆——

In Re: KIRWAN OFFICES S.A.R.L.,

*Debtor.*

———————

STEPHEN P. LYNCH,

*Appellant,*

—v.—

MASCINI HOLDINGS LIMITED, LAPIDEM LIMITED,

*Creditors-Appellees.*

———————

On Appeal from the United States District Court
for the Southern District of New York

---

## APPELLANT REPLY TO THE UNITED STATES OF AMERICA'S AMICUS CURIA

---

Stephen P. Lynch, Pro Se

C/O BKK Co., Kutuzovski Prospect, #26, Str. 3,
Moscow, 121165, Russian Federation
Telephone: +7 (499) 249-0596

Dated: October 26, 2019

**No Attorney Assistance Statement**: this Reply to the United States Amicus Curia was written and prepared by Appellant without legal assistance of any kind.

## TABLE OF CONTENTS

Table of Authorities

Cases

Statutes

Rules

I. Appellant Adopts and Endorses the Government's Amicus Curia (but for four paragraphs) ........................................................................................................... 1

   A. Appellant agrees with the government: the bankruptcy court does not have subject matter jurisdiction over third-party releases, exculpations and injunctions................................................................................................ 1

   B. Appellant objects to the government's languid support for other grounds the district court found to deny Appellant's appeal ....................................... 2

II. The Bankruptcy Court Never Had Subject Matter Jurisdiction ......................... 4

III. There Was No Improper Gamesmanship................................................................ 9

   A. The Appellant did not engage in improper gamesmanship........................... 9

   B. Appellant objections and lack of consent were clear and could not be construed as implied.................................................................................... 11

IV. Silence is Not Consent. Implied Consent Violates Due Process......................... 11

    A. Appellant's claims were not heard and could not be heard by the

        bankruptcy court............................................................................................ 15

V. Appellant Does not Deny Knowledge; He Denies Timely Knowledge............... 16

    Conclusion............................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235 (2006) ..................... 5, 6, 8

Gonzalez v. Thaler, ___ U.S. ___, 132 S.Ct. 641, 648 (2012) ......................................... 5

In re Chassix Holdings, Inc. ................................................................................. 12, 14

In re Genco Shipping & Trading Ltd. ......................................................................... 12

In re SunEdison, Inc., 576 B.R. 453, 455 (Bankr. S.D.N.Y. 2017) ................. 13, 14, 15

In re Wash. Mut., Inc. ........................................................................................... 12, 14

In re Westinghouse Electric Co ................................................................................. 12

Karlin v. Avis, 457 F.2d 57, 62 (2d Cir. 1972) ............................................................ 14

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ......................................................... 16

Parsons v. Halliburton Energy Servs., 785 S.E.2d 844, 851 (W. Va. 2016) .............. 11

Phillips v. Comm'r, 283 U.S. 589, 596–97 (1931) ...................................................... 16

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 584, 583 (1999) ........................................ 5

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) .............................. 4

United States v. Cotton, 535 U.S. 625, 630 (2002) ....................................................... 8

Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974) ...................................................... 16

**Rules**

Rule 3016 ................................................................................................................... 14

**I.     Appellant Adopts and Endorses the Government's Amicus Curia (but for four paragraphs)**

The Appellant adopts and endorses the arguments of the government's Amicus Curia so far they relate to the bankruptcy court's lack of subject matter jurisdiction over third-party releases, exculpations and injunctions. The Appellant opposes the government's 'support' of the district court's findings that it could dispose of this case through other issues.

**A.     Appellant agrees with the government: the bankruptcy court does not have subject matter jurisdiction over third-party releases, exculpations and injunctions.**

Appellant adopts and endorses nearly all of the United States of America (the "government") Amicus Curia docketed by order of the Appellate Court ("Court") on October 7, 2019 date (Dkt. #119). Indeed in the spirit of Wilde's adage that 'imitation is the sincerest form of flattery' and as a proactive precaution pending the Court's decision to docket the government's Amicus Curia, the Appellant copied (with attribution) the entirety of the government's arguments regarding the bankruptcy court's lack of jurisdiction over third-party releases, exculpations and injunctions into his June 28, 2019 Appellant Reply Brief (Dkt. #98, pp11-22).

Appellant fully endorses and adopts all of the government's arguments relating to the issue of a bankruptcy court's jurisdiction to enter final orders including third-party releases, exculpations and injunctions. Those arguments are

1

presented by the government far more eloquently and compelling than this Pro se Party can muster and Appellant has no further comment on that issue.

## B. Appellant objects to the government's languid support for other grounds the district court found to deny Appellant's appeal

The government's Amicus Curia is a thirty-five page document of which four paragraphs (Dkt. 78-2, p. 6-7 and p. 9) give a lackluster suggestion that this Court deny Appellant's appeal on a dispositive basis other than the bankruptcy court's jurisdiction over third-party releases, exculpations and injunctions — which issue was the core and center of the district court's denial of Appellant's appeal. Indicative of the lack of merit to this approach, the government does not argue these issues but merely cites the district court's findings which Appellant has and continues herein to appeal as factually and legally flawed.

The government's goal is obvious, indeed stated, it wishes through any possible means to avoid having decided this "idiosyncratic" case (even worse with a Pro se Party albeit they are apparently too polite to state that directly) from "foreclose[ing] the government or other bankruptcy creditors from litigating this issue [bankruptcy court jurisdiction over third party releases] in a subsequent case that better and more clearly presents the relevant arguments."

The motive is understandable but respectfully the 'quick fix' route is not available by way of any of the "potentially dispositive" issue(s) suggested by the government. Those issues are not dispositive, they are a dead-end. The district

2

court was wrong on the facts and wrong in its judgment.

The issue relates to the Appellant not participating in the bankruptcy after the denial of his motion for bad faith dismissal. The district court in a narrative chock full of factual errors erroneously characterized this as improper gamesmanship by the Appellant. In fact the Appellant was not in the game at all, he stopped participating because he had no further role in the bankruptcy as he was neither creditor nor debtor and without the full rights of the C Share his votes were de minimus (less than 1%, a fraction of 1%). Appellant was a pro se party with limited resources thousands of miles away. The damage to him was already done and he elected his remedy at the London Court of International Arbitration ("LCIA), the agreed jurisdiction for dispute resolution (i.e. damages claims). Having failed to stop the bankruptcy the Appellant had no further role as he had no claims against the debtor, its estate or interest in its restructuring—he had already repudiated the SHA. He certainly was under no obligation to incur potential prejudice to his LCIA claims by coming to New York to police the jurisdiction of the bankruptcy court.

To hold the Appellant's actions against him (not participating in the bankruptcy and suing in the pre-petition agreed jurisdiction) and prevent him from suing third parties (not the debtor, he has no claims against the debtor) requires factual and legal standards which are just not met. First (1.) the bankruptcy court never had subject matter jurisdiction over the third-party releases, exculpations and injunctions and even if arguendo it did, (2a.) the Appellant's silence (not voting

3

on the confirmation plan and not attending the confirmation hearing) was not consent and, (2b.) the Appellant by his filed LCIA claims clearly objected to the third-party releases, exculpations and inunction (he was in the midst of suing the fraudsters and didn't want them to get a 'go free' card from the bankruptcy court) and (2c.) the bankruptcy court knew that (Judge Drain referenced the LCIA suit at the confirmation hearing)[1] and (3.) the notice period was shortened without reason and to an actual period that was Kafkaesque for a pro se party thousands of miles away (who subsequently and inter alia did not have CMS (electronic filing) access, and was required to docket items via courier service, hard copy, wet ink signature[2] and (4.) constitutes denial of due process for the Appellant.

## II.    The Bankruptcy Court Never Had Subject Matter Jurisdiction

The bankruptcy court never had jurisdiction and the Appellant's (who was neither creditor nor debtor) objections to the bankruptcy and the bankruptcy court's jurisdiction over his claims could not have been clearer, louder or more known to the bankruptcy court. At the confirmation hearing on March 20, 2017 Judge Drain on multiple occasions and the Petitioner's counsel referenced the Appellant's freshly filed arbitration request to the LCIA ("Bankruptcy Court Transcript In re Kirwan Offices S.a.r.l March 20, 2017", p.10:22, 13:1 and elsewhere, Dkt. 57,

---

[1]    "Bankruptcy court transcript In re Kirwan Offices S.a.r.l March 20, 2017", p.10:22, 13:1 and elsewhere, Dkt. 57, Special Appendix 5FF, 1276, 1279.

[2]    Even on this docket Appellant filings have been rejected when there has been no wet ink signature. Since the Appellant is in Moscow this requires printing and DHL'ing the documents accounting for weekends and holidays and what is typically four days transit but can be longer.

4

Special Appendix 5FF, 1276, 1279).

The Supreme Court's position that subject matter jurisdiction is a threshold issue and a court's sua sponte obligation to determine subject matter jurisdiction are legion and clear and Judge Drain had this obligation:

"The presence of subject matter jurisdiction is a threshold issue that this court must determine before the merits of the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

The requirement that jurisdiction be established as a threshold matter spring [s] from the nature and limits of the judicial power of the United States and is inflexible and without exception. Ibid.

"The requirement that jurisdiction be established as a threshold matter is inflexible and without exception; for jurisdiction is power to declare the law, and without jurisdiction the court cannot proceed at all in any cause." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 584, 583 (1999).

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Ibid.

"[Courts] have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235 (2006).

It is a matter of law courts must consider jurisdiction before reaching substantive merits of the case, this was never done in the bankruptcy court. See

5

Gonzalez v. Thaler, ___ U.S. ___, 132 S.Ct. 641, 648 (2012) **"When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."** Emphasis added.

Judge Drain never had subject matter jurisdiction to issue third-party releases, exculpations and injunctions and he never independently considered whether he did. Had he sua sponte raised this issue, he would have been required to not adjudicate the third-party releases, exculpations and injunction (against Appellant personally) for lack of subject matter jurisdiction.

"[W] hen a federal court concludes that it lacks subject [] matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235 (2006).

In March 2016 the Pro se, Moscow based Appellant was faced with a tsunami of unexpected issues. Concurrent with fighting the Dutch and English related litigation (where he was named as the respondent to claims in the hundreds of millions)[3], his core asset and protective shield in all of this litigation — the C Share

---

[3]     The Appellant subsequently persevered in the first instance of the Dutch proceedings and last month all claims in the English proceedings were decided in his favor by Sir Michael Burton of the High Court of England and Wales where the Appellant represented himself as a 'Litigant in Person'. All of this legal work (literally thousands of hours of Appellant's time), would have been funded by the Debtor's subsidiary but for Appellees actions that caused damage. Since the bankruptcy court blocked the Appellant from suing the Appellee's and other parties for their guarantees to Appellant, he was forced to undertake his own defense. Through Appellant's self-defense described by Sir Michael Burton as 'able' and 'formidable' the Appellant persevered and the claims were denied in their entirety. Appellant now adds these hours (to the extent the

6

of Debtor, had been unexpectedly terminated by a judge in a courtroom far removed from any nexus to the company and its agreed jurisdictions. Putting aside the physical impractically of responding in the confirmation period or attending the confirmation hearing, the Appellant had many other issues covering literally thousands of pages of complex legal material — in order to protect his claims at the LCIA and husband his limited resources, Appellant made a gut decision and did not participate in the bankruptcy and went to the LCIA.

Now in the years since, the Appellant has done his homework and has made a far more sophisticated consideration of the options he had in those few days in 2017. The litany of cited cases above (and it could go on for pages) is glaring proof that Appellant's gut decision in 2017 was the right decision. Judge Drain had no jurisdiction to impose on Appellant third-party releases, exculpations and injunctions. The bankruptcy court had no jurisdiction, the Appellant cannot now be held accountable for procedural deficiencies and perceived waivers of his rights even if arguendo that is what they are (which they are not). Therefore the alternative dispositive issues found by the district court and 'supported' by the government cannot now be used.

The Appellees and district court describe the procedural history of this case (and the latter decides) as one where the Appellant should have risked prejudice to his LCIA claims (by risking res judicata appearances) and come to the White Plains

English Court does not order full cost compensation) to the damages he seeks from Appellees and other parties.

7

court to actively object to the third-party releases and exculpations on the basis of inter alia lack of bankruptcy court jurisdiction. And by failing to do so he waived any objections. Respectfully this is misplacing the onus and there was no necessity to object as the bankruptcy court never had jurisdiction.[4]

The Appellant was neither creditor, nor debtor, having failed to stop the bankruptcy he had no further role or interest in the bankruptcy. The damage to him was done, he repudiated his pre-petition SHA contract and went to the agreed venue for damage adjudication and where he had any basis to make his claims and collect damages. The bankruptcy court offered him neither of those prerequisites only the pre-petition agreed jurisdiction did, the LCIA. The law and precedent cited are clear, it is not citizen Lynch's (Appellant's) duty or obligation, sitting thousands of miles away, a pro se party, who was neither creditor nor debtor and who held no claims against the debtor or its estate to come to White Plains and monitor/object to the bankruptcy court's jurisdiction. Respectfully deciding jurisdiction was Judge Drain's sua sponte obligation and his failure to do so even in a perfunctory manner only increases the appearance of impartiality that concerns the Appellant and is an issue that most strongly runs throughout this entire appeal.

---

[4]    Subject matter jurisdiction "involves a court's power to hear a case [and] can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235 (2006). "[s]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630 (2002).

8

## III.    There Was No Improper Gamesmanship

The underpinnings of the District Court's decision that Appellant could be disposed on the basis of waived consent are a factually wrong statement of the Appellant's behavior. On the basis of outright factual misstatements/misunderstandings the district court erroneously characterized the Appellant as conducting improper gamesmanship — while wholly ignoring the clearly fabricated nature of the bankruptcy and its contrived domicile in the United States and lack of any nexus to the S.D.N.Y let alone White Plains. What seems particularly relevant to the district court is a series of events that center around, as the district court describes it, the Appellant terminating his email to evade bankruptcy court service. This is just plain wrong. The Appellant's email was terminated because he was forced out of his position as general director of the Debtor's asset subsidiary by the confirmation order. Losing his office and email were consequences of losing his general director position, that is a consequence of the confirmation order and were vehemently opposed by the Appellant until he had no choice in the face of a binding court order no matter how unjust.[5]

### A.    The Appellant did not engage in improper gamesmanship

---

[5]    Other factual misstatements of the district court that appear to colour its assessment of the other dispositive issues include: (1) that there were two U.S. law firms engaged by Kirwan, when there was only one and it was not in New York; (2) Appellant would only settle the underlying cases for $35 million (this is wrong), Appellant would only settle for 10% which at one time was $35 million; (3) Appellant fired his restructuring counsel, this is wrong Appellant simply could not continue to pay them for representation and other factual errors; (4) etc.

The district court cites this behavior and gamesmanship (albeit it referenced to incorrect facts) as grounds to find that Appellant knew of the proceedings and thus is bound to them. This respectfully is the wrong analysis, as Appellant has never denied knowing of the confirmation hearing (addressed below). The relevant issues are (a.) that the Appellant objected to the bankruptcy and took every action he could to stop it; (b.) when he failed to stop it he as neither creditor, nor debtor and having no potential say in the bankruptcy, elected his remedy in the LCIA and filed his complaint prior to the confirmation hearing; and (c.) finally if even arguendo the Appellant was bound to participate in the confirmation hearing (an action that would have jeopardized legal rights in the LCIA), then it is simply impractical to determine, as the district court does, that the Pro se Appellant, thousands of miles and eight time zones away had timely knowledge. The notice period having been cut in half. Presuming Appellant had relied on DHL working perfectly the Notice Period was effectively for Appellant approximately four days not the twenty-eight required by the Bankruptcy Code.

Appellant utilized every opportunity available to him to stop the bankruptcy; up to and including his failed attempt to have the bankruptcy dismissed as a bad faith filing. When that failed he stopped participating as he was neither a Creditor nor the Debtor and as the holder of less than 1% of the shares had no role or practical vote in the bankruptcy.

The plan of reorganization is intended as a multiparty contract between the creditors but it was simply a farce to suggest that the Appellant had any say or

sway in the bankruptcy. Once his C-share was removed the goal was achieved, the Appellant was defanged and completely powerless and without voice (holding only a single share- a fraction of 1% of the outstanding shares). Rather than participate in the show bankruptcy, Appellant chose his remedy in the LCIA as he was entitled to by the SHA.

**B.   Appellant objections and lack of consent were clear and could not be construed as implied**

The claims Appellant seeks to pursue are based on a pre-petition contract, the SHA. Contractual rights may be waived if they are knowingly, voluntarily and intentionally relinquished. See, e.g., Parsons v. Halliburton Energy Servs., 785 S.E.2d 844, 851 (W. Va. 2016). Appellant's filing of an LCIA Complaint can in no way be construed to be a knowing, voluntary or intentional relinquish of his SHA contractual rights — indeed only the opposite can be construed. He did not consent. Likewise a waiver may be express or inferred from action or conduct, but the facts must amount to an intentional relinquishment of a known right.[6]

**IV.   Silence is Not Consent. Implied Consent Violates Due Process[7]**

---

[6]   MURRAY, supra note 101, § 40.1.

[7]   This section has been greatly assisted by an incisive and well-written Fordham Law Review, Dorothy Coco, Third-Party Bankruptcy Releases: An Analysis of Consent Through the Lenses of Due Process and Contract Law, 88 Fordham L. Rev. 231 (2019). Available at: https://ir.lawnet.fordham.edu/flr/vol88/iss1/6. It is extensively quoted herein and the entire section should be attributed to this source.

11

Even if one ignores the Appellant's LCIA claims as filed and known to the bankruptcy court, consent cannot be implied from Appellant's arguendo silence. Silence is not a binding consent as found In re Genco Shipping & Trading Ltd., In re Chassix Holdings, Inc. and In re Westinghouse Electric Co all of the S.D.N.Y. In re Chassix Holdings cited In re Wash. Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011) in holding that "inaction" is not a sufficient manifestation of consent to support a release.[8] In re Westinghouse Electric Co.197 reaffirmed Chassix and went further in its discussion of silence and inaction. On the deemed consent issue, Judge Wiles stated: the notion that you're taking away somebody else's property without additional compensation for it, without identification to what the claims . . . are, without an explanation of why those specific claims can fairly be extinguished, without a proper assessment as to what the actual value of those claims might be, that's extremely troubling to me.[9] This is in fact exactly what occurred in this "bankruptcy" And as extensively addressed in Appellant's Reply Brief the argument that Judge Drain heard Appellant's claims is just without factual basis — nowhere in the bankruptcy transcripts can one even find a mention of 12 of the 16 clauses Appellant alleges majority shareholders (i.e. Petitioners) violated. See Appellant's Brief (Dkt. #34, pp 48-49).

Basing disposition on the Appellant's "silence" (as if a freshly filed LCIA

---

[8]  In re Chassix Holdings, Inc., 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) (citing In re Wash. Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011)).

[9]  Westinghouse Transcript, supra note 173, at 39.

arbitration request could ever be construed as silence), raises serious issues of due process which Judge Wiles's words above allude are a central issue in a similar case.

SunEdison decided in 2017 in the S.D.N.Y by Judge Bernstein is strikingly similar to Kirwan's "bankruptcy" so far as its third-party releases. SunEdison also underscores why the Petitioners in In Re Kirwan could not risk the random assignment of a judge as required by the rules but needed Judge Drain as alternatively the case might have been randomly assigned to Judge Bernstein (putting aside that there were no Debtor assets in S.D.N.Y). This is extensively argued in the Appellant's Reply Brief (Dkt. #98, pp. 2-10, pp 24-25).

In 2017 in SunEdison, Judge Bernstein raised concerns as to whether broad third-party releases could and should be allowed to bind nonvoting creditors who were entitled to vote.[10] Judge Bernstein found that the debtors failed to show that nonvoting creditors had consented, either expressly or impliedly, to the releases and the debtors failed to show that said releases were appropriate under the Metromedia factors.[11] The court held that the failure to return a plan ballot — that is, silence — would not constitute consent.[12] The "conspicuous" warnings, stemming

---

[10] In re SunEdison, Inc., 576 B.R. 453, 455 (Bankr. S.D.N.Y. 2017)

[11] Ibid.

[12] Judge Bernstein cited Chassix and Washington Mutual to support the notion that inaction cannot constitute consent. Id. at 460 (first citing In re Chassix Holdings, 533 B.R. at 81; then citing In re Wash. Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011)); see Matthew A. Feldman, Christopher S. Koenig & Jason D. St. John, New York Bankruptcy Court Issues Opinion Denying Proposed Third-Party Releases in SunEdison, 14 PRATT'S J. BANKR. L. 76, 77–78 (2018).

from Rule 3016, in the SunEdison disclosure statements and ballots regarding the releases did not overcome the court's threshold for consent, as these warnings were not deemed sufficient or specific enough to allow for consent through silence.[13] This is exactly the fact pattern In re Kirwan but Judge Drain never even considered these issues in particular Judge Drain never applied the required Metromedia standard.

Judge Bernstein viewed implied consent as a contractual issue.[14] Referring to general principles of New York contract law, he found that generally, "[a]bsent a duty to speak, silence does not constitute consent."[15] The court agreed that there exists three exceptions to the general rule that silence should not be viewed as consent under New York law none of which apply to this case: (1) when it is supported by the parties' ongoing course of conduct; (2) when the offeree accepts the benefits of the offer despite a reasonable opportunity to reject them and understands that the offeror expects compensation; and (3) when the offeror has given the offeree reason to understand that that silence will constitute acceptance

---

[13]    See In re SunEdison, 576 B.R. at 460–61; see also Matthew Kelsey et al., The Battle over 3rd-Party Releases Continues, LAW360 (Nov. 17, 2017, 4:40 PM), https://www.law360.com/articles/986673/the-battle-over-3rd-party-releases-continues [https://perma.cc/E7E4-5V9T].

[14]    In re SunEdison, 576 B.R. at 458.

[15]    Ibid. ("An offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer." (quoting Karlin v. Avis, 457 F.2d 57, 62 (2d Cir. 1972))); see also James A. Wright III et al., Silence Is Not Consent: SunEdison Court Rejects Third Party Releases by Passive Consent, K&L GATES (Nov. 30, 2017), http://www.klgates.com/silence-is-not-consent-sunedison-court-rejects-third-party-releasesby-passive-consent-11-30-2017/ [https://perma.cc/AZ5V-M56G].

14

and the offeree in remaining silent intends to accept the offer.[16]

## A.     Appellant's claims were not heard and could not be heard by the bankruptcy court

The Appellant's argues in his Reply Brief that his claims were not heard and could not be heard by the Bankruptcy Court. They could not be heard as Appellant was seeking monetary damage awards under English law from the creditors and other third parties, not the Debtor. The Appellant had no claims against the Debtor.

Denying Appellant his right to pursue the third parties against whom he held claims is a further denial of his due process. The Supreme Court has said "some form of hearing is required before an individual is finally deprived of a property interest.[17]

The Bankruptcy Court should have decided the limits to its own authority sua sponte and the Appellant who was neither Creditor nor Debtor was not obliged to communicate his dissent (which he nonetheless did via filing of his LCIA claims) or in any other way participate in the bankruptcy after his efforts to stop it were denied.

---

[16]   In re SunEdison, 576 B.R. at 459 (citing RESTATEMENT (SECOND) OF CONTRACTS § 69(1) (AM. LAW INST. 1981)).

[17]   See, e.g., Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974); Phillips v. Comm'r, 283 U.S. 589, 596–97 (1931).

15

Absent subject matter jurisdiction the Bankruptcy Court had no authority to (1) decide claims between Third Parties (i.e. the Appellant's LCIA claims against his fellow shareholders); (2) authorize any notice let alone shortened Notice Period to Appellant vis a vis his Third Party Claims; (3) or otherwise in any way decide Appellant's claims with or without his consent. And in any event Appellant's consent was never given (explicitly or implicitly). As it was Appellant objected to the Bankruptcy Court's jurisdiction and his claims filed at the LCIA were known to the Bankruptcy Court. As a consequence none of the alternative grounds the District Court said could be used to dispose of Appellant's appeal can be so used at all. The Bankruptcy Court had no subject matter jurisdiction over third party claims, end of case. The related facts have already been presented in Appellant's Reply Brief (Dkt. 98, pp 10-11 and pp 24-25).

## V.    Appellant Does not Deny Knowledge; He Denies Timely Knowledge

Appellees' case on the issue of the shortened notice period is that, "the parties needed sufficient time after confirmation to resolve foreign litigation prior to a scheduled ruling by the (sic.) foreign tribunal (statement of issues, Appellees Brief, Dkt. #72, p2).

The Appellees lied to the bankruptcy court. There was no proffered settlement or even active settlement discussions: no evidence of either can be found in the evidence or case history. There was no evidence as there was no potential settlement. Alleged settlement talks were a smokescreen for the real purpose of the bankruptcy which was to obtain the Appellant's C share for free and at the same

16

time obtain a shield for the creditors/petitioners in the form of exculpation and releases and an injunction against Appellant so that he could not sue them. This is a perversion of the U.S. bankruptcy system.

Notice period is not just a question of actual knowledge, there is also a timeliness test. The timeliness measure should consider Appellant's Pro se status but none of this was considered by the district court. Meanwhile the district court and bankruptcy court both accepted Appellees' reasoning for a shortened period when in fact there were no such reasons. Appellant addresses the factual matrix of the lack of timeliness and challenges to his reply in his District Brief (DDI 12, p34, A-1794) that is tied to his filed Brief to this Court (Dkt. 34).

### Conclusion

On the basis facts and the law and in the interest of preventing a manifest injustice, the alternative dispositive basis discussed by the District Court and suggested by the government cannot be used now. And while the government has its domestic priorities and concern for the bankruptcy system there are other priorities that this Court cannot ignore. This case is one with a significant international profile. It is not just the potential effects of this 'idiosyncratic' case on the U.S. bankruptcy system but interested legal observers in London and Moscow but also Amsterdam and elsewhere are monitoring the outcome of this case.

The most just action is dismissing this bankruptcy in its entirety. Such action will have absolutely no effect on any party whatsoever outside the small universe of the original corporate conflict that this bankruptcy was invented to

17

resolve. Really just two parties the Appellant and the controlling person behind both Petitioners there is no other affected party. There is absolutely no issue of equitable mootness as the only effect of the bankruptcy was the surgical removal of the Appellant's single share to the benefit of the majority shareholder(s)(which is ultimately just one controlling person).

In the alternative at minimum Appellant requests the striking of the third party releases and the injunction that prevent Appellant from suing the parties who caused him damage under a pre-petition contract governed and adjudicated by non-U.S. law.

Inter alia bad faith, lack of jurisdiction, misconduct, fraud and all the other factors that went into faking this bankruptcy and manufacturing a case in White Plains are the only basis for quick disposition of this case (in Appellant's favour) before getting to the thorny and consequential issue of a bankruptcy court's jurisdiction over third-party releases, exculpations and injunctions.

Respectfully submitted,

Stephen P. Lynch

Stephen P. Lynch
Pro Se
Appellant

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Type- Volume Limit**

> Certificate of Compliance With Type-Volume
> Limit, Typeface Requirements, and Type-Style
> Requirements

1. This document complies with [the type-volume limit of Fed. R. App. P. LR 32.1] [the word limit of Fed. R. App. P. (a)(4)(A)] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☑ this document contains 4,771 words, **or**

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 16.0 in Century Schoolbook 12, **or**

   ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(s) _Stephen P. Lynch_

~~Attorney for~~ Stephen P. Lynch

Dated: October 26, 2019

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**
**CHIEF JUDGE**

Date: October 25, 2019
Docket #: 18-3371bk
Short Title: In Re: Kirwan Offices S.a.R.L.

**CATHERINE O'HAGAN WOLFE**
**CLERK OF COURT**

DC Docket #: 17-cv-4339
DC Court: SDNY (NEW YORK CITY)
DC Judge: McMahon

**NOTICE OF HEARING DATE**

**Argument Date/Time:**     Monday, December 9, 2019 at 10:00am.
**Location:**     Thurgood Marshall U.S. Courthouse, 40 Foley Square,
New York, NY, 10007, 15th Floor, Room 1505

**Time Allotment:**     5 minutes per side

Counsel and non-incarcerated pro se litigants presenting oral argument must register with the courtroom deputy 30 minutes before argument.

A motion or stipulation to withdraw with or without prejudice must be filed no later than 3 business days prior to the scheduled date of argument. The Court will consider the motion or stipulation at the time of argument, and counsel's appearance is required with counsel prepared to argue the merits of the case. If a stipulation to withdraw with prejudice is based on a final settlement of the case, the fully-executed settlement must be reported immediately to the Calendar Team, and a copy of it must be attached to the stipulation.

Inquiries regarding this case may be directed to 212-857-8595.
-----------------------------------------------------------------------------------------------------
**Counsel must file the completed form in accordance with Local Rule 25.1 or 25.2. Pro Se parties must submit the form in paper.**

Name of the Attorney/Pro Se presenting argument:
Firm Name (if applicable):
Current Telephone Number:

The above named attorney represents:
( ) Appellant/Petitioner     ( ) Appellee-Respondent ( ) Intervenor

Date: 10/26/2019          Signature:

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

In re. Kirwan Offices S.a.r.l.

**CERTIFICATE OF SERVICE\***

Docket Number: 18-3371

v.

I, Stephen P. Lynch _____, hereby certify under penalty of perjury that

(print name)

on _October 28, 2019_ , I served a copy of _Appellant Reply to the United States_

(date)

of America's Amicus Curia

(list all documents)

by (select all applicable)\*\*

___ Personal Delivery          ___ United States Mail          ___ Federal Express or other
                                                                Overnight Courier

___ Commercial Carrier         _X_ E-Mail (on consent)

on the following parties:

| Mark McDermott | mark.mcdermott@skadden.com | | | |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

\*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

\*\*If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

October 28, 2019

Today's Date

Stephen P. Lynch

Signature

Certificate of Service Form (Last Revised 12/2015)

Case 1:6-3974, Document 128, 10/29/2019, 2691774, Page27 of 27

FedEx Express

ORIGIN ID:MPBA  (917) 499-9139
OLEG VASILYEV

2901 COLLINS AVE UNIT 1408

MIAMI, FL 33140
UNITED STATES US

SHIP DATE: 28OCT19
ACTWGT: 0.50 LB
CAD: 6997845/SSF02021

BILL CREDIT CARD

TO  **ATTENTION INTAKE**
**UNITED STATES COURTHOUSE**
**40 FOLEY SQUARE**

**NEW YORK NY 10007**
(212) 867-8861          REF:
INV:
PO:                              DEPT:



**FedEx**
**Express**

**E**

TRK#  **7805 5622 1463**
0201

**XA PCTA**

TUE — 29 OCT 10:30A
**PRIORITY OVERNIGHT**
**ASR**
**10007**
NY—US  **EWR**

